UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **Vanguard Energy LLC,** | Civil Action No. |
| Plaintiff; | |
| v. | 1:21-CV-00117 |
| **Global Enterprise Solutions LLC and XD Ventures LLC,** | |
| Defendants. | Jury Demand |

**Plaintiff Vanguard Energy LLC's Amended Complaint**

**To the Honorable United States District Court:**

Plaintiff Vanguard Energy LLC ("Vanguard") files its Amended Complaint, and hereby complains and alleges against Defendants Global Enterprise Solutions LLC ("GES") and XD Ventures LLC ("XD") (collectively, "Defendants") as follows:

## I.
## Nature of this Action

1. The import, export, and movement of fuel products in the United States are highly regulated and stringently taxed. The United States imposes excise taxes on fuels: Tax is imposed on the removal, entry, or sale of refined fuel products. § 4081 Internal Revenue Code; *see also* Internal Revenue Service Publication 510, Excise Taxes (Including Fuel Tax Credits and Refunds), Rev. February 2020, Cat. No. 15014I (available at https://www.irs.gov/pub/irs-pdf/p510.pdf), Chapter 1, p. 5. "Removal" means "any physical transfer of taxable fuel" and "any use of taxable fuel other than as a material in the production of taxable fuel or Other Fuels." Internal Revenue Service Publication 510; IRS Treasury Regulation 48.4081-1.

2. The Bulk Transfer/Terminal System is the taxable fuel system consisting of refineries, pipelines, vessels, and terminals. Internal Revenue Service Publication 510 at p. 1. All removals of diesel at a terminal are taxable. *Id.* The position holder at the terminal for that diesel is liable for the tax. *Id.* If the tax is paid on the diesel in more than one event, a refund may be allowed for the "second" tax paid. IRS Treasury Regulation 48.4081-7. In other words, federal excise taxes are largely unavoidable on fuel removed from the Bulk Transfer/Terminal System in the United States.

3. This lawsuit is the result of either (1) Defendants' fundamental misunderstanding of federal excise tax requirements applied to fuel; or (2) Defendants' attempt to skirt those requirements to recover a profit. In both scenarios, it is clear that Vanguard complied with federal excise tax obligations on behalf of Defendants. In addition to the tax liability incurred as a result of this transaction, Vanguard lost revenue and incurred fees, penalties, and other losses. So, GES or XD, or both GES and XD, owe Vanguard over $1,000,000.00.

4. Vanguard seeks a declaratory judgment from this court to that effect. Vanguard also seeks recovery of the economic damages it incurred as a result of its dealings with GES and/or XD, including fees, penalties, and other losses.

## II.
## Parties

5. Plaintiff Vanguard is a Delaware limited liability company. Vanguard's principal place of business is in Florida.

6. Defendant GES is and was a New Jersey Limited Liability Company with its principal place of business in Texas at all times relevant to this lawsuit. GES can be served with process through its registered agent, Vincent Collaso, at 27515 Huston Glen Lane, Katy, TX 77494.

7. Defendant XD is and was a Texas Limited Liability Company with its principal place of business in Texas at all times relevant to this lawsuit. XD can be served with process through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701.

## III.
## Venue and Jurisdiction

8. This Court has jurisdiction over Defendant GES because it conducts business in Texas, is principally located in Texas, and engages in interstate commerce subject to federal excise tax. Moreover, Defendant GES, individually, and/or in concert with Defendant XD, sought to circumvent federal excise tax laws. Venue is proper because a civil action can be brought in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action if there is no district in which the action can otherwise be brought under 28 U.S.C. § 1391. 28 U.S.C. § 1391(b)(3).

9. This Court has jurisdiction over Defendant XD because it is a Texas Limited Liability Company, it conducts business in Texas, it is principally located in Texas, and it engages in interstate commerce subject to federal excise tax. Moreover, Defendant GES individually, and/or in concert with XD sought to circumvent federal excise tax laws. Venue is proper because a civil action can be brought in any judicial

district in which any defendant is subject to the court's personal jurisdiction with respect to the action if there is no district in which the action can otherwise be brought under 28 U.S.C. § 1391. 28 U.S.C. § 1391(b)(3).

10. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to Vanguard's claims occurred in this judicial district. 28 U.S.C. § 1391.

## IV.
## Factual Background

11. Vanguard is a privately held company that is fully licensed by the United States and the State of Texas. With over a decade of experience in the global trade and logistics of petroleum, Vanguard leverages its experience and relationships in the global trade and logistics of petroleum products and crude oil to buy, sell, store, finance and transport fuel. As part of that business, Vanguard has fuel storage capacity of 1,050,000 gallons in the United States alone. Indeed, Vanguard maintains direct refinery accounts, fuel storage and blending facilities, and working relationships with professional oil trading companies, power plants, and steam plants throughout the United States, the Caribbean, and South America.

12. GES attempted to coordinate the sale and shipment of 2,488,920 gallons of Ultra Low Sulphur Diesel ("ULSD") fuel product (the "Fuel") to GES's buyer in Mexico. At all times material to this transaction, GES acted as the owner of the Fuel. GES's actions included: exercising control over movement of the Fuel; chartering vessels to move the Fuel, receiving payment for the Fuel, and making other orders related to the Fuel.

13. But GES is not a taxable fuel registrant, and it does not have a relationship with Maverick Terminals Brownsville LLC ("Maverick "). So, GES needed assistance to store what it represented as its own fuel at a terminal with railcar loading capabilities.[1] Pursuant to a terminaling services agreement, Vanguard became a position holder at Maverick's Brownsville Terminal on October 5, 2020. As a position holder, Vanguard is a taxable fuel registrant and has the capabilities GES required for the transaction.

14. So, through Vanguard, GES directed the Fuel to be discharged in Vanguard's tank at Maverick's Brownsville Terminal. GES then directed Vanguard to remove some of the Fuel from Maverick's terminal and load it onto railcars bound for GES's (or XD's) Buyer in Mexico. During this time, GES continually misrepresented to Vanguard that it was a taxable fuel registrant, and that it was the owner of the fuel being transferred. On March 8, 2021, GES transmitted a false and misleading Bill of Lading indicating that it owned the Fuel. On April 12, 2021, GES principal Vincent Collaso transmitted a false and misleading bill of lading to Vanguard representing that it owned the Fuel, and that it was a taxable fuel registrant.

15. Because all removals of ULSD at a Terminal are taxable, this fuel was subject to federal excise taxes. Since Vanguard is a position holder at the terminal, it became liable for the federal excise tax on the fuel removed. § 4081 Internal Revenue Code; *see also* Internal Revenue Service Publication 510.

---

[1] The ownership of the Fuel is a fundamental issue in this lawsuit. GES originally filed a lawsuit in the 404th Judicial District, Cameron County, Texas regarding this transaction, claiming that it was the owner of the Fuel. *Global Enterprise Solutions LLC v. Vanguard Energy, et al,* 2021-DC-03273, 404th District Court, Cameron County, Texas. That action was subsequently removed to this Court on diversity grounds. XD has since filed a lawsuit against Maverick Terminals in which it judicially admits that it is the owner of the Fuel. *See XD Ventures LLC v. Maverick Terminals*, 2021-DC-04368, 107th District Court, Cameron County, Texas.

16. Vanguard complied with its federal excise tax obligations. But while Vanguard was liable for paying the excise taxes on the removed fuel, Vanguard never owned the fuel and it did not benefit from GES's sale of the Fuel to the buyer in Mexico. So, to recover the excise taxes it incurred and reported to the Internal Revenue Service on GES's sale of the Fuel, Vanguard notified GES in writing that the taxes were due. Vanguard provided an invoice for the amount of the excise taxes due on the Fuel.

17. The facts surrounding the ownership of the fuel only began to emerge after GES completed the sale and excise taxes were due, and GES refused to pay them. During the week of May 3, 2021, GES's principal, Paul Hudson, falsely represented to Vanguard representatives during a telephone call that it was a taxable fuel registrant, and that it somehow was not responsible for federal excise taxes on the fuel. In fact, in a letter dated May 11, 2021, Vanguard asked Hudson for the documentation to support the claims he made over the telephone. Neither Hudson nor GES provided documentation to support the claims.

18. On May 13, 2021, Hudson attempted to continue the ruse, but his story changed. In a letter, Hudson and Xan Difede, President of XD Ventures, LLC, falsely described XD Ventures LLC as the "position holder" and "exporter of record." Hudson provided invoices from Phillips 66 to support his position on the excise tax. He also provided a 637 Excise Tax form, which belonged to XD Ventures LLC, and GES's Texas supplier license.

19. In the May 13, 2021 correspondence, Hudson and Xan Difede also made false statements about GES's prior agreement to pay storage fees.

According to GES and XD, an agreement made by GES affiliate Rajan Ferros to pay Vanguard for its services was limited to Vanguard's "loading fees" on certain Fuel transactions.

20.     GES and XD also informed Vanguard that Daniel Dauajare, a GES representative, attempted to remove fuel stored in the tank Vanguard was leasing, and that he would continue to attempt to do so. Notably, the Terminaling Services Agreement between Maverick and Vanguard prohibits any party aside from the Lessee (i.e., Vanguard) from ordering the movement of any Fuel from the leased tank. But GES and XD persisted in their attempts to remove fuel from Vanguard's leased tank.

21.     On behalf of GES, *but not XD*, Hudson, attempted to clarify discrepancies between the GES bills of lading and Phillips 66 invoices in a May 18, 2021 letter. On behalf of GES, *but not XD*, Hudson again demanded return of the Fuel. But Hudson completely ignored Vanguard's assertion that federal excise taxes were due in connection with the transaction.

22.     Ultimately, the volumes of fuel Hudson referenced in his May 18, 2021 as being discharged into Vanguard's tanks were not correct. Again, Hudson misrepresented facts to gain an advantage in the transaction. But Hudson's May 18, 2021 letter also detailed GES's scheme to circumvent its federal excise tax obligations:

> At this point we simply want to get what fuel is left at Maverick. We are not asking you to be the exporter of record for any fuel. Red Bridge Logistics was the exporter for the railcars that were loaded, and we simply want you to transfer the remaining fuel back to XD's 637 as we pick it up by truck. Our records indicate that based on what was delivered and what was loaded we should have 691,168 gallons remaining at Maverick.
>
> We are ready to send trucks to pick up the fuel and clear your storage. Your fee of 5 CPG is understood unless you prefer, we deal with Maverick direct. We can have trucks staged as early as Wednesday morning, May19, 2021.
>
> Please let me know what you want to do,
>
> _____
> Paul J Hudson
> Director
> Global Enterprise Solutions
> phudson@gescommodities.com
> Tel. +1-956-358-6134

May 18, 2021, *Letter from Paul J. Hudson to Pierre Galoppi.*

23. GES had no intention of paying the federal excise tax due on the transaction. And, it did not want Vanguard to do so. GES was focused on recouping fuel to cover its losses. So, GES negligently or recklessly conflated regulations and stated it intended to list Red Bridge Logistics as the "exporter of record."

24. As a position holder and taxable fuel registrant, however, Vanguard's excise tax obligations remain, and taxes on GES and/or XD's fuel are due and owing.

## V.
## Causes of Action

**A. Declaratory Judgment Action Pursuant to 28 U.S.C. § 2201**

25. Plaintiff incorporates by reference all previous allegations in this complaint.

26. Vanguard seeks a judgment pursuant to 28 U.S.C. § 2201 declaring the rights, obligations, and other legal relations of Vanguard, GES, and XD related to the Fuel and the excise taxes GES and/or XD owe on the Fuel.

27. Vanguard specifically seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that the Fuel was subject to federal excise tax.

28. Vanguard specifically seeks a judgment pursuant to 28 U.S.C. § 2201 declaring the ownership of the Fuel.

29. Vanguard specifically seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that XD and/or GES were required to pay federal excise taxes on the Fuel.

30. Vanguard specifically seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that XD and/or GES were required to pay federal excise taxes on the Fuel.

31. Vanguard specifically seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that XD, GES, or XD and GES owe Vanguard $607,296.48 for the excise taxes Vanguard assumed on XD's behalf.

32. Vanguard specifically seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that XD, GES, or XD and GES owe Vanguard the damages and penalties it incurred as a result of XD and GES's refusal to pay Vanguard for Defendants' excise tax obligation, including revenue lost as a result of GES's actions to attempt to recuperate its losses.

**B. Common Law Fraud**

33. Plaintiff incorporates by reference all previous allegations in this complaint.

34. As detailed above, Defendant GES engaged in a deceitful and shady course of dealing in order to use Vanguard as a pawn in its excise tax fraud scheme.

35. As detailed above, in March and April of 2021, GES representative Vincent Collaso transmitted doctored bills of lading that falsely represent that GES owned the fuel, and was a taxable fuel registrant.

36. As detailed above, during the week of May 3, 2021, GES's principal, Paul Hudson, falsely represented to Vanguard representatives during a telephone call that it was a taxable fuel registrant, and that it somehow was not responsible for federal excise taxes on the fuel.

37. In May 13, 2021 correspondence, Hudson and Xan Difede, President of XD Ventures, LLC, made false statements about GES's prior agreement to pay storage fees.

38. During the week of May 3, 2021, GES's principal, Paul Hudson falsely represented to Vanguard representatives Matt Klann, Scott Bradley, and Pierre Galoppi over the telephone that it was a taxable fuel registrant when in fact GES had merely submitted an application as a taxable fuel registrant and had not posted the bond required of taxable fuel registrants. So, GES falsely represented to Vanguard that it was registered and bonded. When GES made this representation, it knew it was false.

39. Defendant GES doctored bills of lading sent to Vanguard in an effort to lead Vanguard to believe that it owned the Fuel. When GES sent bills of

lading indicating that it was the owner of the fuel, GES knew the representation was false.

40. Defendant XD knew that GES was doctoring bills of lading to falsely represent that GES was the owner of the Fuel, and using XD's 637 to accomplish the transaction, thereby aiding GES's fraud.

41. Defendant GES further doctored bills of lading transmitted to Vanguard to falsely refer to the Fuel as "mineral oil" for export to Mexico instead of ULSD. GES did this to attempt to make the export of the mineral oil exempt from taxes in Mexico, but also to skirt U.S. excise tax requirements. When GES sent bills of lading indicating that the Fuel was "mineral oil" GES knew the representation was false.

42. GES made the foregoing representations to use Vanguard as a conduit for its attempt to avoid paying federal excise taxes on the fuel.

43. Vanguard relied on GES's representations when providing GES with storage at Maverick's Port of Brownsville facility.

44. Defendant GES's representations caused Vanguard to be responsible for the federal excise taxes on fuel it did not own, sell, or export.

**C. Negligent Misrepresentation**

45. Plaintiff incorporates by reference all previous allegations in this complaint.

46. In the alternative, GES made a series of negligent representations to Plaintiff about its status as a fuel registrant, the ownership of the fuel, and the taxability of the Fuel.

47. In the May 13, 2021 correspondence, Hudson and Xan Difede, President of XD Ventures, LLC, also made false statements about GES's prior agreement to pay storage fees. According to GES and XD, an agreement made by GES affiliate Ferro to pay Vanguard for its services was limited to Vanguard's "loading fees" on certain Fuel transactions.

48. GES and XD mislead Vanguard in the May 13, 2021 correspondence when it informed Vanguard that Dauajare attempted to remove fuel stored in the tank Vanguard was leasing, and that he would continue to attempt to do so. Notably, the Terminaling Services Agreement between Maverick and Vanguard prohibits any party aside from the Lessee (i.e., Vanguard) from ordering the movement of any Fuel from the leased tank. But GES and XD insisted that they would continue in their attempts to remove fuel from Vanguard's leased tank.

49. Ultimately, the volumes of fuel Hudson referenced in his May 18, 2021 as being discharged into Vanguard's tanks were not correct. Again, Hudson misrepresented facts to gain an advantage in the transaction.

50. GES repeatedly made negligent representations in March and April of 2021 to Plaintiff by doctoring bills of lading to represent that it owned the fuel.

51. As detailed above, GES repeatedly made negligent representations to Plaintiff about its status as a taxable fuel registrant in March, April, and May 2021, its financial stability, its understanding federal excise taxes, and its ability to meet its federal excise tax obligations.

52.     As detailed above, in March and April of 2021, GES representative Vincent Collaso transmitted doctored bills of lading that falsely represent that GES owned the fuel, and was a taxable fuel registrant.

53.     As detailed above, During the week of May 3, 2021, GES's principal, Paul Hudson, falsely represented to Vanguard representatives during a telephone call that it was a taxable fuel registrant, and that it somehow was not responsible for federal excise taxes on the fuel.

54.     GES did not use reasonable care in obtaining or communicating the foregoing information to Vanguard when attempting to secure fuel services.

55.     Defendant XD knew that GES was doctoring bills of lading to falsely represent that GES was the owner of the Fuel, and using XD's 637 to accomplish the transaction, thereby aiding GES's negligent misrepresentation.

**D.   18 U.S.C. § 1962 Civil RICO Claim**

56.     Plaintiff in Plaintiff incorporates by reference all previous allegations in this complaint.

57.     Title 18 U.S.C. § 1962 of the Racketeering Influenced and Corrupt Organizations Act ("RICO") makes it a federal crime to perform certain acts which involve conducting an enterprise through a pattern of racketeering activity.  See generally, 18 U.S.C. § 1962.

58.     Under § 1964(c), what is commonly referred to as the "Civil Rico" provision, Congress has also provided for a private federal cause of action to "[a]ny person injured in his business or property by reason of a violation of section 1962." 18

U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 508, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985).

59. Between March and June of 2021, as detailed above, GES engaged in mail fraud, wire fraud, and tax fraud in attempting to export the Fuel to its buyer in Mexico without paying federal excise taxes.

60. GES directed the Fuel to be discharged in Vanguard's tank at Maverick's Brownsville Terminal. GES then directed Vanguard to remove some of the Fuel from Maverick's terminal and load it onto railcars bound for GES's Buyer in Mexico. Upon information and belief, GES altered the bills of lading for those railcars to reflect "mineral oil" as the exported fuel instead of ULSD. During this time, GES continually misrepresented to Vanguard that it was a taxable fuel registrant, and that it was the owner of the fuel being transferred.

61. On March 8, 2021, GES transmitted a false and misleading Bill of Lading indicating that it owned the Fuel.

62. On April 12, 2021, GES principal Vincent Collaso transmitted a false and misleading invoice to Vanguard representing that it owned the Fuel, and that it was a taxable fuel registrant.

63. In March and April of 2021, GES affiliate Ferro falsely represented to Vanguard in text and email messages that GES intended to pay for Vanguard's services at the Maverick terminal.

64. Because all removals of ULSD at a Terminal are taxable, this fuel was subject to federal excise taxes. Since Vanguard is a position holder at the terminal, it became liable for the federal excise tax on the fuel removed.

65. Vanguard complied with its federal excise tax obligations. But while Vanguard was liable for paying the excise taxes on the removed fuel, Vanguard never owned the fuel and it did not benefit from GES's sale of XD's fuel to the buyer in Mexico.

66. So, to recover the excise taxes it incurred and reported to the Internal Revenue Service on GES's sale of the Fuel, Vanguard notified GES in writing that the taxes were due. Vanguard provided an invoice for the amount of the excise taxes due on the Fuel.

67. Hudson's May 18, 2021 letter detailed GES's scheme to circumvent its federal excise tax obligations:

> At this point we simply want to get what fuel is left at Maverick. We are not asking you to be the exporter of record for any fuel. Red Bridge Logistics was the exporter for the railcars that were loaded, and we simply want you to transfer the remaining fuel back to XD's 637 as we pick it up by truck. Our records indicate that based on what was delivered and what was loaded we should have 691,168 gallons remaining at Maverick.
>
> We are ready to send trucks to pick up the fuel and clear your storage. Your fee of 5 CPG is understood unless you prefer, we deal with Maverick direct. We can have trucks staged as early as Wednesday morning, May19, 2021.
>
> Please let me know what you want to do,
>
> _____
> Paul J Hudson
> Director
> Global Enterprise Solutions
> phudson@gescommodities.com
> Tel. +1-956-358-6134

May 18, 2021, *Letter from Paul J. Hudson to Pierre Galoppi.*

68. GES and XD had no intention of paying the federal excise tax due on the transaction. And, it did not want Vanguard to do so. GES it was focused on recouping fuel to cover its losses. After months of subterfuge, GES director Paul Hudson outlined how GES and XD intended to complete their excise tax fraud and fraud of Vanguard for its services.

69. GES forced Vanguard to choose between paying federal excise taxes or committing excise tax fraud.

70. GES even attempted to secure a state court Temporary Restraining Order in furtherance of its excise tax fraud scheme.

71. As a result, Vanguard was forced to halt its operations at the Port of Brownsville, which amounted to over $285,000 in lost revenue.

72. Between March and June of 2021, GES and XD's managers engaged in a pattern of racketeering independent of the operations of GES and XD to (1) defraud Vanguard of payment for its services; and (2) to prevent Vanguard's payment of federal excise taxes in order to recover a larger margin on its sale of fuel to the buyer in Mexico.

73. Defendant GES maliciously, intentionally, and with knowledge of its falsity, represented to Vanguard that it was a taxable fuel registrant when in fact GES had merely submitted an application as a taxable fuel registrant and had not posted the bond required of taxable fuel registrants. So, GES falsely represented to Vanguard that it was registered and bonded. When GES made this representation, it knew it was false.

74. Defendant GES maliciously, intentionally, and with knowledge of its falsity, doctored bills of lading sent to Vanguard in an effort to lead Vanguard to believe that it owned the Fuel. When GES sent bills of lading indicating that it was the owner of the fuel, GES knew the representation was false.

75. Defendant XD knew that GES was doctoring bills of lading to falsely represent that GES was the owner of the Fuel, thereby aiding GES's fraud.

76. Defendant GES further maliciously, intentionally, and with knowledge of its falsity doctored bills of lading that were transmitted to Vanguard to falsely refer to the Fuel as "mineral oil" for export to Mexico instead of ULSD. GES did this to attempt to make the export of the mineral oil exempt from excise taxes. When GES sent bills of lading indicating that the Fuel was "mineral oil" GES knew the representation was false.

## VI.
## Damages

77. Plaintiffs incorporate by reference all previous allegations in this complaint.

78. As a direct and proximate result of GES and XD's conduct Vanguard was forced to incur federal excise taxes on the Fuel in an amount of $607,296.48. The owner of the Fuel (either GES or XD, but not Vanguard) is liable for the taxes owed on the Fuel.

79. As a direct and proximate cause of GES and XD's conduct, Vanguard was forced to halt all of its transactions through the Port of Brownsville. This caused Vanguard to suffer an additional $500,000.00 in losses, including, but not limited to, lost revenue, penalties, fees, and other consequential losses.

80. As a direct and proximate cause of GES and XD's conduct, Vanguard is owed the storage and throughput fees for services it provided to GES in the amount of $322,359.00.

81. As a direct and proximate cause of GES and XD's conduct, Maverick declined to renew Vanguard's Terminaling Services Agreement. As of the time of filing of this lawsuit, there is not an acceptable substitute terminal available at the Port of Brownsville. As such, because of GES and XD's conduct, Vanguard will be forced to halt

all transactions through the Port of Brownsville, eliminating a significant revenue stream for Vanguard.

## VII.
## Jury Demand

82. Demand is hereby made for a jury to decide all fact issues in this case, and Plaintiffs have tendered the jury fee.

## VIII.
## Conditions Precedent

83. All conditions precedent have been performed or have occurred. Plaintiffs sue Defendants in all capacities in which they are entitled to recover.

## IX.
## Prayer

WHEREFORE, Plaintiff pray that Defendants be cited to appear and answer, and that upon final trial, Plaintiff have and recover from Defendants the following:

    A.    A judgment declaring:

        1) the rights, obligations, and other legal relations of Vanguard, GES, and XD related to the Fuel and the excise taxes Vanguard owes on the Fuel;

        2) that the Fuel was subject to federal excise tax;

        3) the ownership of the Fuel.

        4) that XD and/or GES were required to pay federal excise taxes on the Fuel;

        5) that XD, GES, or XD and GES owe Vanguard $607,296.48 for the excise taxes Vanguard owes on XD's behalf;

        6) that XD, GES, or XD and GES owe Vanguard the damages and penalties it incurred as a result of XD and GES's refusal

        to pay Vanguard for Defendants' excise tax obligation, including revenue lost as a result of GES's actions to attempt to recuperate its losses;

B.     Actual damages in excess of this Court's minimum jurisdictional limits;

C.     Prejudgment interest at the highest legal rate allowed by law;

D.     Post-judgment interest on said judgment until paid in full;

E.     Court costs; and

F.     General relief.

        Respectfully,

        **Atlas Hall & Rodriguez LLP**

        By: */s/ E. Michael Rodriguez*
        E. Michael Rodriguez
        State Bar No. 00791553
        S. D. Tex. No. 18759
        Email: mrodriguez@atlashall.com
        Eduardo Roberto Rodriguez
        State Bar No. 00000080
        S. D. Tex. No. 1944
        Email: errodriguez@atlashall.com
        Paul T. Serafy
        State Bar No. 24095901
        *Pro Hac Vice Pending*
        Email: pserafy@atlashall.com
        222 N. Expressway, Suite 203
        Brownsville, Texas 78520
        Telephone: (956) 574-9333
        Facsimile: (956) 574-9337

        **Attorneys for Plaintiff**
        **Vanguard Energy LLC**

**Certificate of Service**

I hereby certify that a true and correct copy of this filing has been served via the Court's electronic filing system, on October 21, 2021, upon all counsel of record as follows:

Ernest W. "Butch" Boyd
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
Jeremy R. Stone
State Bar No. 24013577
jeremystone@butchboydlawfirm.com
Michael J. Blanchard
State Bar No. 24036231
mikeblanchard@butchboydlawfirm.com
2905 Sackett Street
Houston, TX 77098
Phone: (713) 589-8477
Fax:(713) 589-8563

**Counsel for Plaintiff**

*/s/ Paul T. Serafy*
Paul T. Serafy
Of Atlas Hall & Rodriguez LLP